For today is case number 415-1016, The People, State of Illinois v. Ernest Maurice Bell. And for the appellant, we have Ms. Patterson. And for the affilee, Ms. Brooks. Are you ready to proceed, counsel? You may do so. Good morning. May it please the Court, my name is Ashley Patterson, and I represent Mr. Ernest Maurice Bell. And Ms. Patterson, I'm going to stop you. I need you to speak up just a little bit. That mic doesn't amplify you, it just records, so just speak up a little bit. And she's doing that for me, because I'm here. No, it's not for me. So, would you speak up? I would like to focus my time today on the first two issues and the fifth issue. However, if there are any questions concerning the remaining issues, I'll be more than happy to answer those. This is a case about a man with mental illness and suicidal ideations who was ignored by the judicial system. Those who were supposed to protect Mr. Bell failed to do so. And as a result of their rush to trial, a sick man with a history of mental illness, drug abuse, and suicide attempts, was sentenced to 22 years for possession and delivery of a controlled substance. This procedure was profoundly unfair and warrants reversal and remand for a fitness hearing and a new trial. First, the court and counsel should have formed a bona fide doubt about Mr. Bell's fitness, and a hearing or, at the very least, an evaluation should have been ordered. Some relevant factors to determine whether there's a bona fide doubt about fitness are the rationality of the defendant's behavior and demeanor, counsel's statements concerning the defendant's competence, and any prior medical opinions on issues of the defendant's fitness. Mr. Bell's behavior prior to trial was alarming and should have signaled to the court that he needed help and was not in a condition to stand trial. Moments before the trial was supposed to even begin, Mr. Bell had attempted suicide by tying the shirts that he was given in jail around his neck and flushing the other end down the toilet. Ms. Patterson, having been in trial court and been in situations where you have people who are agitated, maybe don't want to go to trial, obviously reading the briefs in this case is disturbing as far as what was going on. But at the same time, I'm also concerned about the three of us making a decision against what the trial court did when we weren't there. We don't have the benefit of interaction with this individual and seeing what happened and their demeanor and what was going on in the context. And so how do we get over that hurdle? Because in my view, that's a huge hurdle for you. Yes, and so my argument is that even if the trial court at the time, having seen Mr. Bell responding this way, even if at that moment the trial court did not form a bona fide doubt about his fitness, after having reviewed his PSI prior to sentencing, in which it detailed that Mr. Bell had been found unfit in a prior proceeding after having attempted suicide, I think then the court could have and should have formed a bona fide doubt about his fitness and ordered an evaluation or a hearing before sentencing him. Because the court was very much so in a position where it could have done that. It's allowed to do that by statute and it's allowed to do that by case law. So even if the trial court at that moment thought that maybe Mr. Bell was putting on or trying to delay the trial, we argue that right as soon as the trial court reviewed that PSI and saw that, the trial court could have then stopped and ordered some type of evaluation. In addition to the court's duty to order a fitness evaluation or hearing, trial counsel also should have done so. Okay, let me ask this question. Okay. You do focus on ineffective assistance of counsel. Yes. If you were to prevail on the Krankel issue, why should we issue what would effectively be or could be a precedent on any other issue? Because those issues may well be mooted by the trial court, either the same judge or a different judge, conducting a Krankel hearing, reviewing the transcripts that are available, understanding the dynamic of the courtroom. You're right. You should have. You received ineffective assistance of counsel. What would happen then? I mean, why should we rule on any other issue? Well, in this case, a do-over is pretty much necessary because Mr. Bell's right to be present. I'm sorry. Wouldn't that be if the trial court did what you would hope that a trial court would do under Krankel, wouldn't that lead to a do-over? Yes, it would lead to a new trial. And if it didn't lead to a do-over, the other issues would still be alive for appeal, wouldn't they? I believe so, yes. Then why are we speaking on issues that might be resolved at the trial level? Assuming for the moment you would prevail on Krankel, a lawyer who had the benefit of your brief and what happened at trial, plus the PSI argument, judge would be able to demonstrate ineffective assistance of counsel and there would be a do-over. Yes, and the do-over would be necessary because in this case, Mr. Bell also lost his right to be present at his trial. So even winning on the Krankel issue, we would still be able to get him the new trial. If he were to lose on the Krankel issue, there's still this issue of his trial being conducted in absentia. And that actually leads me to my next point about how Mr. Bell did not voluntarily, knowingly, intelligently, and with sufficient awareness of the circumstances, waive his constitutional right to be present at his trial. The record is not clear at all that he understood that by having this kind of mental moment, this moment of just kind of breaking down, that he was not going to be allowed to be present for his trial and that he would end up being convicted while he's not there. It's not clear from the record that he was aware of this. So what else would you have had the trial court do? We know the trial court went to the holding cell with a court reporter and security and tried to get Mr. Bell to cooperate and come to the trial. So what else should the court have done? Well, the court could have continued the trial. Well, the court could have even delayed the trial a day or two to allow Mr. Bell an opportunity to calm down. Because it's very, very important that when a person is waiving their right to be present at trial, that they are aware that this is what they are doing. And it is not clear from the record that Mr. Bell was aware of that. And so the less severe option, other than conducting his trial in absentia, would have been delaying it or continuing it. Because there was certainly no rush to get the trial over with. It hadn't started. There were no victims who were waiting to testify. Do we know that? Well, the witnesses were the officers who would have likely been able to come back. And then there was the paid informant who he was being paid. So he would come back because he's getting paid to testify. So there was no rush to get this trial going. There was no jury that had been assembled or anything. It very much so could have been delayed or continued. And because the record does not demonstrate that Mr. Bell knowingly and voluntarily, intelligently, and with sufficient awareness of the circumstances waived his presence at trial, this Court should remand Mr. Bell's case for a new trial. Finally, Mr. Bell's 22-year sentence was excessive. His PSI was filled with details about his history of mental illness and drug addiction, that he suffers from major depression, and he has a history of addiction to prescription drugs, cocaine, and other hallucinogenic drugs. He's even admitted, this is in the PSI, that he relied on drugs in order to self-treat his depression. So it's clear, or at least one can deduce, that his prior history, which is more or less of a mental health history, and the majority of it is drug-related offenses, it's clear that his drug abuse and mental illness likely go hand-in-hand with his drug offenses. And this is a factor that the Court should have taken into consideration. Now, I know that the Court stated that, you know, it had read the PSI and that it had considered his mental illness. But it does not seem, knowing this connection, it does not seem that the Court meaningfully considered this. And instead, it sentenced Mr. Bell to an astounding 22 years for a drug-related offense, an offense that was not violent. Indeed, a 22-year sentence could have been given for a violent crime like murder or even a sexual assault. But here, a non-violent drug offense by an impoverished and mentally ill man simply did not warrant a 22-year sentence. Counsel, I'm not sure if you followed Justice Connett's inquiry from a few moments ago. He suggested to you that if you went on the Krankel hearing, then these other issues are not issues that this Court would take up, that they would be taken up back in the trial court. Now, he's not going to argue that we're going to lose on the Krankel hearing since the State concedes it. Or alternatively, he's going to argue that we don't even have jurisdiction. Either way, it appears this case is going back for a Krankel hearing. So these other issues would not appear to be something this Court would address. And that, I think, is what Justice Connett was trying to convey to you. Do you agree with that? Or are you in disagreement with that? Well, I think that these issues are still issues that this Court can consider. I believe that the trial court, if it reads what you all have said about these other issues, that it could perhaps sway the trial court to consider, for instance, Mr. Bell's mental illness and his drug addiction. And in doing so, perhaps consider lowering his sentence of 22 years. But if he gets a do-over, we don't know what his sentence is going to be. Right. Well, I think you're just trying to cover your bases. Yes. And so if there are no further questions, I will briefly conclude. Mr. Bell's rights to be present and stay on trial while fit were steamrolled just to get his trial over with. This is deeply unfair, and this Court should remand Mr. Bell's case for a fitness hearing and a new trial. Thank you. Thank you, Counsel. You have additional time in the rebuttal, if you so desire. Ms. Brooks? Thank you, Your Honors. If we don't have jurisdiction, what's going to happen? Okay. Can I identify myself with the record, too? Oh, sure. Thank you. I am Allison Paige Brooks, appearing on behalf of the people at Maple Leaf Court. If there's no jurisdiction, then this Court simply has to dismiss the appeal, which essentially it's like a remand to the trial court, but you don't even really need to remand it because jurisdiction never left the trial court because jurisdiction has always remained in the trial court. So just simply dismissing the appeal allows the trial court to then proceed on the pro se post-trial motion, which was never disposed of. Okay. And if you lose, i.e. on the jurisdiction argument, what are we going to do? It's not really a win or a lose proposition, but... Aren't we going to send it back? Under Crankle, yes, it would go back because the state's conceived of Crankle. Do you think that we've been unclear as to what, as to the way this Court is addressing Crankle in terms of choosing or not choosing to address other issues, forgetting fines and fees? We have several decisions which have said, we're going to grant Crankle if it's clear, and we're going to send it back. And in the context of doing that, we will tell the circuit clerk and the court, you've imposed void fines, or you've imposed fines that you were not authorized to impose in terms of the clerk. And then any other issues that are raised are going to be taken care of at the trial court level after the Crankle hearing results in a win or a lose for the defendant. I mean, have we said that, that you're aware of? I'm not sure, Your Honor. I guess my theory is, the defendant has a constitutional right to a direct appeal, and if this Court declines to hear issues on direct appeal that they have raised under the idea that the case is being remanded for a limited purpose of holding a preliminary investigation under Crankle, and that issue is denied, and essentially the judgment then stands, I'm not sure the defendant has the ability to appeal anything other than the Crankle decision of the denial of the new trial at that point. I'm not sure if that's the case or not. So there is a possibility, if there is any authority out there that I'm not aware of, that might limit the scope of appeal after a Crankle remand. I'm not sure if that's something that this Court needs to be aware of, if that exists. I'm not sure. Either way. But that is another issue that I would not want the defendant to inadvertently lose their constitutional right to direct appeal of certain issues on the basis of the inability, if that is found at the subsequent appeal, then they might be somehow prejudiced by that. With respect to the Rucker case, this defendant's motion was not sufficient under Rucker. However, the Stage Cites Errors, a more recent case at the Illinois Supreme Court, which shows that essentially the Rucker standard for a pro se motion alleging ineffective assistance of counsel, it need not be detailed, it need not cite specific examples, it doesn't have to have a lot of support. It just simply needs to be a motion and make an express claim. And then those standards are met here, so it is essentially a proper pro se motion, because the defendant being represented by counsel only has the ability to make this type of motion, alleging ineffective assistance. Other motions are not properly before the Court, but the defendant is allowed to make an express pro se claim of ineffective assistance. That was probably before the Court never disposed of the State's position is that makes their notice of appeal premature and ineffective. With respect to the fitness issue, bona fide doubt is an abusive discretion standard, and I think under the Sandem case, things that arise subsequently in the record, like here the PSI the defendant relies on, are proper subjects to be considered by a reviewing court. Obviously the trial court at the time made the ruling on bona fide doubt, did not know what would be ultimately the information in the PSI at the time, but the trial court also did not actually rule in this case that the PSI made any difference in terms of the bona fide doubt issue. Would that also be an example, though, of potential ineffectiveness, in that defense counsel would have had the opportunity after the PSI was prepared to ask the Court to reconsider earlier rulings, to reverse itself? A trial court has the power to do that. If the claim is they failed to investigate the defendant's mental health history or upon learning mental health history didn't properly attempt to capitalize on it, still they would not get relief unless they show a prejudice, which requires a reasonable probability they would get a different result at trial, which means here would be a reasonable probability that the trial court would have granted a new trial had the defense attorney pointed out to the court, oh, by the way, in 2009 he was found unfit, he had this depression episode related to, I think, the death of his sister or something like that. I'm sorry, daughter. I'm sorry, Your Honor. So essentially nothing like that happened here. It's not comparable. He was upset because his attorney told him a police misconduct defense was not something he was willing to present because it wouldn't be a legal or meritorious defense. So he has a conflict with his counsel. He gets agitated, and the trial court can see he's agitated. It can see that he is unwilling to communicate with counsel and unwilling to communicate with the court. That doesn't mean that he is unable to understand the nature and purpose of the proceedings or to assist in his own defense. Well, counsel, with the hindsight of the information contained in the PSI, I guess for me as a trial court, I would be thinking, well, I thought he was just trying to delay the trial and just trying to get out of it. But now I've got this additional information. Maybe he wasn't just trying to be difficult and get out of going to trial. You're just speaking of the fact that we can utilize information found out after the fact. So isn't that a reasonable inference? It could be an inference that could be drawn that the defendant's agitation was caused by an underlying mental disorder. But a person can be mentally unsound but still be fit in the context of being fit for trial. Because fitness for trial is a very limited concept. And the defendant could have a depressive episode, could be agitated, and could still be fit in the terms of having these two fundamental characteristics. The abilities, not the willingness, the abilities. And even if a mental episode caused him to be unwilling to cooperate with his attorney, that does not mean that he's unfit in terms of being unable to assist in his defense. So there's an important distinction there. And I think the Smith case highlights a particular defendant who was essentially unwilling to cooperate with the court and their counsel. And this sort of behavior, courts have to be extremely cautious at encouraging or rewarding. So essentially a defendant who finds themselves in a situation where they don't want to go to trial that day for whatever reason. They would like to get a continuance for a fitness hearing, and so they start banging on the cell doors, refuse to come out, refuse to cooperate with a court who is trying to make sure they're making an on-the-record waiver of their right to, and understand, be admonished about their right to be present for trial, and make an on-the-record waiver of that, explicit waiver, to protect the record, to protect their rights. And if the defendant is unwilling to cooperate with that, that's obstreperous behavior. It's disrespectful to the court to sit on the floor in the corner and not communicate with the court's inquiries, and to not answer appropriately. That's disruptive, and that's the type of behavior that constitutes a forfeiture of defense right to be present. And the court didn't even need to engage in this sort of like outside the holding cell of the hallway discussion. The defendant's told court security he's not coming to trial. He didn't want to leave the holding cell. He wanted to be taken back to the jail. As soon as that's communicated to the court, that's a waiver of his right to be present. Well, I understand what you're saying, but I think it's admirable that the trial court did that, and I certainly would not want to discourage something like that. I understand your question. I'm just simply trying to make the point that the trial court went above and beyond the duty, and it was very admirable in terms of protecting the record, protecting the defendant's rights, and that's something that should be encouraged in this situation. My point is the trial court did not even have to engage in those steps in order for the defendant to have forfeited the right to be present and have that judgment be affirmed over the argument that he somehow inadequately waived his right to be present. Well, let's flip that. If I had read this PSI, I would have wondered whether or not I should have entered a verdict of guilty but mentally ill. If I were a trial judge at a bench trial. Which would have prompted me to take into account the mental illness that may have contributed to his outburst, but also would be a... mitigation factor. I mean, if someone was found guilty but mentally ill, the theory was, when that was created, that they were going to get treatment in facilities, which probably doesn't happen, given the state of the Department of Corrections. But it might prompt the trial judge to be more lenient. So, as a public defender or a private counsel, wouldn't I have the obligation to bring that to the court's attention? And say, Your Honor, I would have asked my client to plead guilty but mentally ill if such a plea would have been accepted. Or the trial judge to say, if that argument had been made to me, I might have found that he was guilty but mentally ill. Again, it's the PSI information. You made the point, you could be mentally unsound but still be fit to stand trial. You could also be unfit to be sentenced. Or, if you're mentally unsound, you could be guilty but mentally ill. If that were a verdict that was sought. And the failure to seek it may be ineffective assistance to counsel. I'm not sure if that's true, because... I'm not sure either. The present standard requires a different trial result, and because the difference between mentally ill and guilty, I'm sorry, guilty but mentally ill and guilty, has no real practical impact. In fact, I think the cases I've found that might have said something like, because there is no actual requirement that... There's no real practical difference between two sort of verdicts, so there's no actual prejudice. Right, so unless the insanity defense was raised, which brought it to issue, there would be no thought in anybody's mind about, no, you're not insane, but you're guilty but mentally ill. My understanding is that for the Sixth Amendment constitutional right to counsel, effective assistance of counsel, the difference, the lost opportunity of the guilty but mentally ill verdict has no Sixth Amendment constitutional implication. That's my understanding. Practically, here though, if the mitigation from the mental illness, if that's given to the court, then whether the actual verdict was guilty or guilty but mentally ill, that can still be considered a mitigation sentence. So I think there was no ineffective assistance here that can be remedied under the Sixth Amendment. So essentially, the defendant was misbehaving here at the trial court, which essentially that's an appropriate conclusion from the record, and therefore, reviewing courts have to be very sensitive to the idea that rewarding a behavior by giving a new trial or telling the trial court that despite what looked like an obvious record of misbehavior, is somehow going to be second-guessed on appeal, especially on a cold record where the reviewing court cannot see exactly what was going on. That has to be something that has to be extremely obvious and clear and obvious reversal. There has to be a reversible error in order to remedy on appeal like this. So therefore, the trial court's ruling was reasonable and should be upheld. With respect to sentencing, these were the 9th, 10th, and 11th felonies. He also had been on mandatory supervisory release for essentially the same offense very recently for that. It's also important to note this is the doubled maximum term of 60 years, so it's actually a 6 to 60 instead of 6 to 30. So 22 is actually in the lower half of that range. Will he serve 50 percent or 75 or 85 on this? Do you know? I believe it's 50 percent because it has to be over 100 grams for the 75 percent statute to take effect. I don't believe he had 100 grams. So, yeah, the truth in sentencing and the doubled range and the extent of his history, particularly doing this again, essentially after getting out from doing this before, shows that he has a poor rehabilitative potential and therefore the judgment should be affirmed. And I'd entertain other questions. Thank you. I don't see any at this time. Thank you, Ms. Brooks. Any rebuttal, Ms. Patterson? So, excuse me. In response to the State's argument pertaining to jurisdiction, the State relies on people v. heirs, which presented a similar situation as here. So in heirs, the defense counsel filed a motion to reconsider the sentence, and on the same day the defendant also mailed a pro se petition, which alleged ineffective assistance of counsel. The trial court did not address the ineffective assistance claim, nor did it dispose of this pending pro se motion. Nonetheless, our Supreme Court addressed the ineffective assistance counsel claim and held that even a bare allegation of ineffective assistance of counsel requires an inquiry by the trial court. Our Supreme Court did not suggest that the appeal was premature because the trial court did not dispose of the petition. Rather, it simply remanded the case to the trial court for a crankle hearing. It didn't say that it could not do that. It was the same situation as in this case. And so this, too, is what Mr. Bell is requesting, a crankle hearing, because the trial court did not address this ineffective assistance claim. And that's the point that the State is conceding. So just like our Supreme Court, this Court, too, can remand this case for a crankle hearing. As far as the State's argument about prejudice goes, when it concerns counsel, here, there was prejudice to Mr. Bell. His counsel's failure to raise his fitness as an issue ultimately ended up in Mr. Bell losing his right to be present for his trial. Because he was mentally unfit at the time, the Court assumed, based off of his mental unfitness, that he was waiving his right to be present at trial. This is prejudicial. So Mr. Bell was prejudiced by trial counsel's ineffectiveness. In conclusion, Mr. Bell deserved to receive a fair trial, one in which he was fit and able to participate. And rather than ensure that Mr. Bell was fit, trial counsel and the trial court rushed to start his trial and ignored some clear signs of his unfitness. Mr. Bell implores this Court to please not ignore him the way that the trial court and his counsel did, and remand his case for a new trial and a fitness hearing. Thank you, Your Honor. Thank you.